Good morning. May it please the Court, Counsel, my name is Justin Bell. I represent Richard Kucera in this matter and respectfully request reserve three minutes for rebuttal in this matter. In this case, there are three issues raised by the appellant. I'm going to give a short factual summary and then, unless the Court has any questions beforehand, intend to raise, essentially argue them in reverse order of what was briefed, and so address the 2251 and then the 1591 issue and then address the motion to suppress last. And the fact recitation is going to be relatively brief. The only thing I want to address is this is a situation where the defense was not just simply requesting age instructions or knowledge of age instructions based off of him simply saying, I didn't know the age. But there's significant evidence in this case that was submitted in which he was actively misled regarding the age of the victims at hand. This is a situation where not only his testimony, and when I say his, the defendant's testimony in this matter, is that I was told by the minor victims and the co-defendant, who ended up being a cooperating witness, that the victims were over the age of 18. But there's evidence from the victim testimony themselves and the cooperating witness, all which state and concede the fact that they were telling Mr. Kucera that they were over the age of 18, to the point where one of the victims said that I was told to tell him that I was 18 because he would not do anything with you if he knew that you were under the age of 18. And that gives a different factual posture to this case and a lot of the other cases that this court has addressed in the past. In my briefing in the case, and I argued it before the court, I understand the court's prior rulings that relate to mistake of age, and they are not always favorable to my position in these cases. But there are differences in the facts here that I think make a difference. And I think there's been some development, as argued in the brief, at the Supreme Court level regarding these issues. I gather you're referring to Rehave, right? Correct. So in Rehave, the gun statute had a knowingly term in the proximity of the elements that the Supreme Court applied it to. What knowing term, what term knowing in 2251 is in proximity to the age requirement or the age issue here? The only knowing I see is knowing that it will be transmitted in commerce or something along those lines, which seems remote from the minor question. Thank you, Judge Brenner, for that question. I think that, I mean, the word knowing is earlier in the statute as referred, and there's some proximity issues. And of course, I think you have... I don't see the term knowing before that. Maybe I'm missing it. No, it's only in the one spot that you're there. I think that, one, I think that... And you can throw into that, that historically that's not been a requirement, actual knowledge of minor, right? That is, at least, that is what the Eighth Circuit has interpreted excitement video to hold. Excitement was wrong? Where are you going with this? No. Nothing adverse can be used against me because it's wrong. Judge Loken, I am not arguing that this Court needs to reverse excitement or say that it was wrong at all age to this. First of all, I think when looking at excitement, the Court needs to look at it as that Court actually, I mean, the actual holding of that case is to read a knowing element into the 55, excuse me, a 2252 prosecution in this, which is the normal distribution, not the production element. So, if you look at the actual holding of excitement, I think that you can read it in... I have an issue here. Excitement was a case cited in one that the District Court relied on and followed, whatever you want to say. Right. I think the... Judge, I mean, it's three steps removed from this question. Where is the mens rea in this statute? Your Honor, our argument is that you can read excitement and re-hife together, ra-hife, would make more likely that... So, Wilson is wrong and Noseley is wrong and Morera Bravo are wrong, period. Morera Bravo is post-ra-hife. It addresses ra-hife. I would agree with that. It extended the life of Wilson, if you will. Yes, Your Honor. I think that it's applying it to a separate statute as it relates to We agree Wilson's controlling. Your Honor, I would submit that Wilson is not controlling in light of ra-hife, which I think, if you look at the reasoning of ra-hife and the otherwise innocent conduct exception that was addressed thereof, that you can read Wilson to have been over... I mean, this wouldn't be overruled, but it was wrong based off of the definition, the arguments and the adoption of the otherwise innocent conduct exception. You've also, early in your argument, you said, based on the facts and the law, is there... I'm sensing a bit of an uphill battle on some of the case law here under this particular statute, not prejudging that, but what did you mean by the facts? I mean, I'm hearing a, wow, this is an unusual situation and the law is not permitting me to put on a defense for my client, and you're running up against the case law that says that doesn't matter. Do you have any argument or approach for how the court might develop an affirmative defense of some sort? That was one of your alternative arguments, and I don't know... I wondered how you proposed the court would go about doing that. Your Honor, I think that, and that's accurate, Your Honor, and I'll answer that question before I get into rebuttal. I think the pathway of moving forward with that is essentially to adopt what the U.S. District Court, the Ninth Circuit, the United States versus the United States District Court affirmative defense is, which did analyze the prior case law. Say that case again. It's the United States versus the United States District Court. It's a weird procedural history for the case, but it's the Ninth Circuit holding. There's a circuit split on this issue. There's been a circuit split on this issue for almost 40 years. But if the Eighth Circuit were to adopt that, which would allow an affirmative defense and was proposed, it's in the record, it was proposed as a jury instruction in this case, it would resolve this issue, authorize an affirmative defense, would be consistent. This Court has rejected that argument in the past. I'm not saying that it hasn't, but I think given the adoption of the otherwise innocent conduct, it gives more credence to the argument that... You mean that 1998 case? 1988 case, Your Honor, I believe. 88? Yeah, I believe that's the... So the defendant would proffer a minimum level of evidence to justify the affirmative defense instruction to...  Have we done that? This Court has not... This Court has rejected that in the past, pre-Rahif. I would submit that the rationale on Rahif would give rise to this Court to revisit that decision. With that, Your Honor, I reserve the remainder of my time for rebuttal. Thank you.  Good morning. May it please the Court, Counsel, I'm Kevin Colliner with the U.S. Attorney's Office in South Dakota. We're here asking that these convictions be affirmed in all cases. Counsel has conceded the... He has an uphill battle here with respect to some binding precedent of this Court. I'd kind of go in reverse order and talk first about this Ninth Circuit holding. That preceded excitement video, among other things. And as he's mentioned, this Court has rejected that reasoning. My own personal view is that that case has been essentially overruled by excitement video, but the Ninth Circuit, as I understand it, yet to state that. In terms of Rahif, there are several things going on here. One is the issue of the statutory construction that Judge Gernder mentioned. The other is that Rahif was dealing with purely otherwise innocent conduct, right? Possessing a firearm without knowing your status as being innocent. It's not just innocent conduct, it's conduct protected by the Second Amendment, right? To innocently own a firearm. Here, we're talking about, at the base level, prostitution. And this Court has stated very plainly in Morero-Bravo that prostitution is always non-innocent conduct, whereas possessing a gun can be purely innocent conduct. So that's another reason that Rahif really has no bearing on this Court's analysis in this case. But that wouldn't apply to 2251, though, correct? The non-trafficking count? Right. And that's been addressed by the footnote in excitement video probably first. I mean, probably the most often cited footnote of the Supreme Court is this note 2, which discusses what would be different about a production of pornography. Yeah, and I think in probably most cases that your office and a number of offices prosecute, that's true. That the reasonable ability to or opportunity to see the person that's involved, the victim, answers the question. And then that poses then the exception which we have here when it's a fine line, right? When you've got someone who poses or passes as much older. I wouldn't say it's a fine line in the sense that this Court has addressed this very sort of factual scenario in the Coach case, K-O-E-C-H. Yeah, yeah. And what I'm saying is I'm not necessarily saying it's a fine line here or in any particular case, but I think that what that footnote doesn't address is the practical reality on the ground, which is probably not particularly common, but there are going to be situations where it's 17 but could really look 19. Well, and that was the case in excitement video, right, of whoever produced the pornography that was at issue there. Look, I mean, essentially what the Supreme Court's saying in all the cases where you're producing pornography, you better be sure about the age. Much like if you're in the business of procuring prostitutes, you better be sure about their age. And the history and the historical context of these laws makes it essentially a crime in which knowledge of age is no defense. And so that's where we're at with both of these 1591 counts and with the production count. 1591 is separate in the sense that the statute there does provide a mens rea of a reasonable opportunity to observe, at least in its least, I guess, least culpable sense. And that was Congress' amendment to that statute post-excitement video to take that into account. You know, the suppression issue wasn't addressed by counsel. I think it's adequately addressed in the briefing and especially by the report and recommendation at issue here. In that report and recommendation, I would just commend to the Court's reading, there's a footnote by the magistrate judge where he went through and listed a variety of similar cases rejecting this notion of an unequivocal invocation of rights in this sort of scenario. Unless the Court has any further questions for me, I guess I'll take my cue by the Court's silence and take my seat. Thank you. For rebuttal? Thank you, Judge Wolkin. I would simply state that I think there's some differences here between what counsel stated and some of the case law. Specifically as it relates to excitement video, the Ninth Circuit still routinely gives that instruction, still has upheld that in case law after excitement video. It's a model instruction in the Ninth Circuit that is still there as it relates to it. I would submit that it would be appropriate moving forward, and it's in line with excitement video in the sense that excitement video only deals with the elements of the charge, not whether or not the First Amendment requires an affirmative defense in situations where someone would reasonably believe based off of actions of the alleged victim in the case, which we have here. I mean, all we're looking for is to be able to present the jury a theory based off of this, think that that's appropriate in a situation where it would be otherwise innocent conduct, and it would be under 2251. Maybe that's different under 1591 in a prostitution sense. With that, I thank you for your time and would ask the Court to reverse and amend.